Javier L. Merino
The Dann Law Firm, PC
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**SHANA-KAY MEDLEY,**

        Plaintiff,

  vs.

**HOMEBRIDGE FINANCIAL SERVICES, INC.,**

        Defendant.

Case No.:  -21-cv-

**COMPLAINT FOR DAMAGES**

**JURY DEMAND ENDORSED HEREON**

Plaintiff, Shana-Kay Medley ("Medley"), through counsel, states as follows for her Complaint against Defendant Homebridge Financial Services, Inc. ("Homebridge").

### PARTIES, JURISDICTION, AND VENUE

1.    Medley is the owner of real property and improvements thereupon located at and commonly known as 19 Laurel Place, Newark, NJ 07106 (the "Home").

2.    Medley currently occupies and maintains the Home as her primary, principal residence and has maintained the Home as such at all times relevant to these Counterclaims.

3.    On March 25, 2019, Medley executed a promissory note in the amount of $256,808.00 (the "Note") and a mortgage on the Home purportedly securing the Note (the "Mortgage") (collectively, the "Loan"). A copy of the Mortgage is attached as **Exhibit 1**.

4.     Homebridge is a mortgage servicer organized under the laws of the State of New Jersey and registered to do business in the State of New Jersey.

5.     Homebridge is the current servicer of the Loan and has serviced the Loan at all times relevant to this Complaint.

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), as this action arises out of PHH's violations of the Real Estate Settlement Procedures Act (RESPA").

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Medley maintains the Home and resides within this District, Homebridge does business within this District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District

## SUMMARY OF CLAIMS

8.     Medley files this action in substantial part to enforce regulations promulgated by the Consumer Financial Protection Bureau (CFPB) and implemented pursuant to 12 U.S.C. § 2605(f) that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.1, et seq. ("Regulation X").

9.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

10.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

11.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013) which became effective on January 10, 2014.

12.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties[]." 12 U.S.C. § 2605(k)(1)(C).

13.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA]." 12 U.S.C. § 2605(k)(1)(E).

14.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

15.     Medley asserts a claim for relief against Homebridge for violations of the specific rules under RESPA and Regulation X, as set forth, infra.

16.     Medley has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, infra, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

17.     Medley additionally asserts a statutory claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2 (the "NJCFA").

## STATEMENTS OF FACTS

18.     Medley suffered financial difficulties culminating in a default on her obligations under the Loan in 2019.

19.     On or about January 24, 2020, Homebridge initiated foreclosure proceedings against Medley in the Superior Court of New Jersey, Chancery Division, Essex County, assigned case number F-001168-20 and captioned Homebridge Financial Services v. Shana Medley, et al. (the "Foreclosure"). A copy of the Foreclosure Docket is attached as **Exhibit 2**.

20.     On or about May 27, 2020, Medley, through her HUD-Certified Housing Counselor, submitted a loss mitigation application to Homebridge (the "Application"). A copy of the email submission is attached as **Exhibit 3**.

21.     To date, Homebridge has failed to notify Medley in writing that Homebridge acknowledged receipt of the loss mitigation application and determined that the loss mitigation application is complete or incomplete. Instead, the only correspondence Homebridge sent Medley was a letter dated June 10, 2020 which stated:

> We are following up in regard to your previously received communication. Our review is taking longer than anticipated and we will need additional time to furnish a response. We will provide a response as soon as our research has concluded.

A copy of the letter is attached as **Exhibit 4**.

22.     To date, Homebridge has failed to evaluate Medley for all loss mitigation options available to her and provide her notice in writing stating Homebridge's determination of which loss mitigation options, if any, it would offer to Medley.

23.     On or about August 14, 2020, Medley retained counsel to represent her in the instant matter. A copy of the filed Notice of Appearance is attached as **Exhibit 5**.

24.     On or about September 8, 2020, Medley, through counsel, sent correspondence to Homebridge consisting of or otherwise comprising a request for information pursuant to, *inter alia*, 12 C.F.R. § 1024.36 (the "RESPA RFI"). A true and accurate copy of the RESPA RFI is attached as **Exhibit 6**.

25.     On or about September 8, 2020, Medley, through counsel, sent correspondence to Homebridge consisting of or otherwise comprising a request for information pursuant to, *inter alia*, 12 C.F.R. § 1024.36 including a request for a payoff statement pursuant to 12 C.F.R. § 1026.36(c)(3) (the "The Payoff/TILA RFI"). A true and accurate copy of the Payoff/TILA RFI is attached as **Exhibit 7**.

26.     The Payoff/TILA RFI requested Homebridge to provide an accurate statement of the total outstanding balance that would be required to pay Medley's obligation in full as of a specified date. The Payoff/TILA RFI also requested Homebridge provide information relative to the owner, master servicer, and current servicer of the Loan. *See* Exhibit 7.

27.     Homebridge received the RESPA RFI on September 15, 2020 at its designated address for receipt of such. United States Postal Service. A copy of the United States Postal Service (USPS) tracking information for the Payoff/TILA RFI's is attached as **Exhibit 8**.

28.     Homebridge received the Payoff/TILA RFI on September 11, 2020 at its designated address for receipt of such. United States Postal Service. A copy of the United States Postal Service (USPS) tracking information for the RESPA RFI is attached as **Exhibit 9**.

29.     Homebridge sent correspondence dated September 24, 2020 in response to the Payoff/TILA (the "Response") stating "[the Loan] is currently in a mortgage-backed security of Ginnie Mae." A true and accurate copy of the Response is attached as **Exhibit 10**. The Response failed to provide a payoff statement.

30.     On or about October 14, 2020, Medley sent correspondence to Homebridge consisting of or otherwise comprising a notice of error alleging that Homebridge committed various errors pursuant to 12 C.F.R. §§ 1024.35(b)(11) and 1024.35(b)(6), specifically, that Homebridge failed to properly respond to the Payoff/TILA RFI by: (1) failing to identify the actual

security for which the loan serves as collateral as required by Regulation X and RESPA; and (2) failing to provide a payoff response ("NOE #1"). A true and accurate copy of NOE #1 is attached as **Exhibit 11**.

31.     Homebridge received the NOE on October 16, 2020 at its designated address for receipt of such. United States Postal Service. A copy of the United States Postal Service (USPS) tracking information for the NOE is attached as **Exhibit 12**.

32.     Homebridge sent two letters dated October 21 and October 22, 2020, respectively, each advising, in relevant part:

> Thank you for your recent communication. We will promptly review your inquiry, complete research, and respond within 30 business days.
>
> If your communication includes a request for the identity and address of the owner of this loan, this information will be mailed to you separately within 10 business days.

A copy of the letters is attached as **Composite Exhibit 13**.

33.     Through correspondence dated November 6, 2020, Homebridge provided its untimely response to the payoff requested by and through the Payoff/TILA NOE (the "Payoff Letter"). A true and accurate copy of the Payoff Letter is attached as **Exhibit 14**.

34.     Homebridge has failed to provide correspondence consisting of a substantive response to NOE #1 as of this date.

35.     Homebridge has failed to provide correspondence consisting of a substantive response to the RESPA RFI as of this date.

36.     On or about November 9, 2020, Medley sent correspondence to Homebridge consisting of or otherwise comprising a notice of error alleging that Homebridge committed various errors pursuant to 12 C.F.R. §§ 1024.35(b)(11), specifically, that Homebridge (1) failed to

properly respond to the RESPA; (2) failed to properly acknowledge the Application; and (3) failed to properly respond to the Application ("NOE #2"). A true and accurate copy of NOE #2 is attached as **Exhibit 15**.

37.    Homebridge received NOE #2 on November 9, 2020 at its designated address for receipt of such. United States Postal Service. A copy of the United States Postal Service (USPS) tracking information for the Payoff/TILA RFI's is attached as **Exhibit 16**.

38.    Homebridge sent correspondence dated November 12, 2020 confirming receipt of NOE #2 and advising they would need additional time to furnish a response. A copy of the letter is attached as **Exhibit 17**.

39.    However, Homebridge has failed to provide correspondence consisting of a substantive response to NOE #2 as of this date.

40.    On December 21, 2020, Medley, through counsel, submitted another loss mitigation Application to Homebridge.

41.    On February 1, 2021, the Foreclosure Court entered an order deeming the instant claims non-germane to the Foreclosure Matter. A copy of the order is attached as **Exhibit 18**.

**IMPACT UPON AND DAMAGES SUFFERED BY MEDLEY**

42.    Homebridge failed to properly service the Loan which has directly and proximately caused the following damages to Medley:

   a.   Medley incurred attorneys' fees and costs in preparing and submitting a secondary loan modification application;

   b.   Medley incurred additional attorneys' fees and costs in defending the Foreclosure Matter which would not have bee;

c.  Homebridge failed to timely review Medley's loan modification application preventing Medley from saving her Home by obtaining the payment relief that a modification would have provided to her;

d.  Medley incurred attorneys' fees and postage costs in the preparation and mailing of the notices of error and in the review of the responses to the notices of error;

e.  Medley has suffered an unnecessary delay in the rehabilitation of her credit standing which should have begun upon Homebridge's completion of their review of Medley's Application; and

f.  Great emotional distress driven by the continued fear of losing her Home in foreclosure, which has resulted in anxiety and other mental distress.

## ADDITIONAL EVIDENCE OF HOMEBRIDGE'S PATTERN AND PRACTICE OF VIOLATIONS OF REGULATION X

43.  Homebridge's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Mr. Cooper's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

44.  At the time of the filing of this Complaint, Homebridge has had Ten (10) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" concerning

mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online

database (http://www.consumerfinance.gov/complaint database).

## COUNT ONE:

## VIOLATIONS OF 12 C.F.R. § 1024.41(b)(2)(i) AND 12 U.S.C. § 2605(k)(1)(E)

### (Failure to send written correspondence acknowledging receipt of the Application within five (5) days of receipt)

45.     Medley restates and incorporates all of the statements and allegations contained in

paragraphs 1 through 44 in their entirety, as if fully rewritten herein.

46.     "A borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to

section 6(f) of RESPA (12 U.S.C. §2605(f))". 12 C.F.R. § 1024.41(a).

47.     12 C.F.R. § 1024.41(b)(2)(i) provides:

(i)     If a servicer receives a loss mitigation application 45 days or more
before a foreclosure sale, a servicer shall:
(A) Promptly upon receipt of a loss mitigation application, review
the loss mitigation application to determine if the loss mitigation
application is complete; and

(B) Notify the borrower in writing within 5 days (excluding legal
public holidays, Saturdays, and Sundays) after receiving the loss
mitigation application that the servicer acknowledges receipt of the
loss mitigation application and that the servicer has determined that
the loss mitigation application is either complete or incomplete. If a
loss mitigation application is incomplete, the notice shall state the
additional documents and information the borrower must submit to
make the loss mitigation application complete and the applicable
date pursuant to paragraph (2)(ii) of this section. The notice to the
borrower shall include a statement that the borrower should consider
contacting servicers of any other mortgage loans secured by the
same property to discuss available loss mitigation options.
(ii)     The notice required pursuant to paragraph (b)(2)(i)(B) of this
section must include a reasonable date by which the borrower should
submit the documents and information necessary to make the loss
mitigation application complete.

48.     Medley, through her third-party representative, submitted, and Homebridge received, the Application more than forty-five (45) days prior to the foreclosure sale of the Home as no foreclosure sale was scheduled at such time. *See*, Exhibit 3.

49.     As Homebridge received the Application more than forty-five (45) days prior to a scheduled foreclosure sale dates, Homebridge was required to promptly review each of the Applications to determine whether each the Application was complete and send written notice to Medley within five (5) business days of receipt of the Application stating whether the Application was complete, and if not, the information necessary to complete the Application as well as a reasonable date by which Medley was required to submit the same. *See* 12 C.F.R. § 1024.41(b)(2).

50.     Rather than comply with 12 C.F.R. § 1024.41(b)(2) with respect to the Application, Homebridge entirely ignored the Application and refused to send any correspondence acknowledging the same.

51.     Homebridge's failure to acknowledge the Application within five (5) business days of receipt and provide the requisite notice thereafter constitutes one (1) clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(2)(i).

52.     Homebridge's to comply with 12 C.F.R. § 1024.41(b)(2) with respect to the Application caused Medley to suffer actual damages, including, but not limited to, the attorneys' fees and expenses incurred in preparing and submitting NOE #2 and extreme emotional distress, further described, *supra*. *See*, Exhibit 15.

53.     Homebridge's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Medley's rights.

54.     As a result of Homebridge's actions, Homebridge is liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

55.     Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO:
## VIOLATIONS OF 12 C.F.R. §§ 1024.41(b)(1) or (c) AND 12 U.S.C. § 2605(k)(1)(E)

### (Failure to exercise reasonable diligence in obtaining documents and information to complete each of the Applications)

56.     Medley repeats and realleges paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

57.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

58.     12 C.F.R. § 1024.41(b)(2) provides:

(i)     If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
(A)   Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
(B)   Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If the loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section.

(ii)     The notice required pursuant to paragraph (b)(2)(i)(B) of this section must include a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete.

59.     "A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application." 12 C.F.R. § 1024.41(b)(1).

60.     12 C.F.R. § 1024.41(c)(2)(iv) provides, in part, that:

> A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, *when no additional information is requested in such notice*, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application.

(Emphasis added).

61.     Medley, through counsel, submitted, and Homebridge received, Application #1 prior to Homebridge scheduling a foreclosure sale of the Home. Accordingly, Homebridge received the Application more than forty-five days prior to a scheduled foreclosure sale date.

62.     As Homebridge received the Application more than forty-five (45) days prior to the scheduled foreclosure sale dates, Homebridge was obligated to review the Application to determine if they were complete and notify Medley in writing within five (5) days (excluding legal public holidays, Saturdays, and Sundays) after receiving the Applications pursuant to 12 C.F.R. § 1024.41(b)(2)(i)(B).

63.     Homebridge made no attempts whatsoever, let alone diligent attempts, to attempt to obtain necessary documents to complete either the Application.

64.     Homebridge's failure to timely send the required written notices to Medley as required by 12 C.F.R. § 1024.41(b)(2)(i)(B) further evidences its complete lack of diligence to complete the Application. *See*, *supra*.

65.     Homebridge's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete either of the Applications as

expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitute one (1) clear, separate, and distinct violations of 12 C.F.R. § 1024.41(b)(1).

66.     Homebridge's failure to comply with 12 C.F.R. § 1024.41(b)(1) with respect to the Applications caused Medley to suffer actual damages, including, but not limited to, the attorneys' fees and expenses incurred in preparing and submitting NOE #2 and extreme emotional distress, further described, *supra*. *See*, Exhibit 13.

67.     Homebridge's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Medley's rights.

68.     As a result of Homebridge's actions, Homebridge is liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

69.     Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT THREE

### VIOLATIONS OF 12 C.F.R. § 1024.41(c)(1) AND 12 U.S.C. § 2605(k)(1)(E)

**(Failure to send written correspondence evaluating the complete Application within thirty (30) days of receipt)**

70.     Medley repeats and realleges paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

71.     A borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))". 12 C.F.R. § 1024.41(a).

72.     "A borrower may enforce the provisions of [12 C.F.R. § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))". 12 C.F.R. § 1024.41(a).

73.     12 C.F.R. § 1024.41(b)(2)(i) provides:

(i)    If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

(A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
(B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

74.    12 C.F.R. § 1024.41(c)(2)(iv) provides, in relevant part:

(iv) *Facially complete application.* A loss mitigation application shall be considered facially complete when a borrower submits all the missing documents and information as stated in the notice required under paragraph (b)(2)(i)(B) of this section, when no additional information is requested in such notice, or once the servicer is required to provide the borrower a written notice pursuant to paragraph (c)(3)(i) of this section…

75.    12 C.F.R. § 1024.41(c)(1) provides, in relevant part:

(1) *Complete loss mitigation application.* Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:
(i) Evaluate the borrower for all loss mitigation options available to the borrower; and

(ii) Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any

requirements for making an appeal, as provided for in paragraph (h) of this section.

76.     Medley submitted, and Homebridge received the Application more than forty-five (45) days prior to the foreclosure sale of the Home as no foreclosure sale was scheduled at such time. *See*, Exhibit 3.

77.     Homebridge failed to review the Application to determine if it was complete and notify Medley in writing within five (5) days (excluding legal public holidays, Saturdays, and Sundays) after receiving the Applications pursuant to 12 C.F.R. § 1024.41(b)(2)(i)(B).

78.     As Homebridge failed to send the notice required by 12 C.F.R. § 1024.41(b)(2)(i)(B), Medley's Application was facially complete as of May 27, 2020. 12 C.F.R. § 1024.41(c)(2)(iv). Therefore, Homebridge was in possession of a complete loss mitigation application as of March 27, 2020.

79.     As such, pursuant to 12 C.F.R. § 1024.41(c)(1), Homebridge was required, within thirty (30) days of March 27, 2020, to: (i) evaluate Medley for any and all loss mitigation options available to Medley; and, (ii) provide written notice to Medley "stating [Hombridge's] determination of which loss mitigation options, if any, it will offer to [Medley] on behalf of the owner or assignee of the mortgage

80.     That is, pursuant to 12 C.F.R. § 1024.41(c)(1), Homebridge was required to evaluate Medley for all loss mitigation options available to Medley and send written notice to Medley detailing their determination of Medley's eligibility for such, on or before April 27, 2020.

81.     Homebridge did not issue any requests to Medley for any additional or missing information and/or documentation, of which Homebridge was not already in possession, in order to supplement or otherwise complete the loss mitigation application during the time period from March 27, 2020 to April 27, 2020.

82.     Homebridge did not evaluate Medley for all loss mitigation options available to Medley and send written notice to Medley detailing their determination of Medley's eligibility for such, on or before April 27, 2020.

83.     Homebridge's failure to review Medley's complete loss mitigation application within thirty (30) days of receipt constitute a clear, separate, and distinct violation of 12 C.F.R. §1024.41(c).

84.     Homebridge's failures to review Medley's complete loss mitigation application within thirty (30) days of receipt caused Medley actual damages, including the attorney's fees, the preparation and submission of a new loss mitigation application and otherwise defense of the pending foreclosure.

## COUNT FOUR

### [Violations of 12 C.F.R. § 1024.36(d) and 12 U.S.C. § 2605(k)(1)(E) for failing to properly respond to a request for information]

85.     Medley repeats and realleges paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

86.     12 C.F.R. § 1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

87.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

88.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

[A] servicer must respond to an information request by either:

(i)  Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

89.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and
(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

90.     A servicer shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."12 U.S.C. §§ 2605(k)(1)(E).

91.     The RESPA RFI meets the definition of a request for information. *See*, Exhibit 6.

92.     Medley sent the RFI to Homebridge at the Designated Address and Homebridge received the RFI at the Designated Address on September 15, 2020. *See*, Exhibit 8.

93.     Pursuant to 12 C.F.R. § 1024.36(d)(2)(i)(B), Homebridge was required to provide written correspondence to Medley in response to the RESPA RFI "not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receive[d] the information request", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1). That is, Homebridge was required to provide its response on or before October 27, 2020.

94.     Medley never received any written correspondence from Homebridge consisting of a substantive response to any of the items requested in the RESPA RFI on or before the response deadline, and therefore, Homebridge failed to comply with the requirements of 12 C.F.R. § 1024.36(d)(1) regarding the RESPA RFI.

95.     Medley incurred fees in having counsel prepare and send NOE #2 on her behalf to Homebridge at the Designated Address, which would not have been required but for Homebridge's failure to properly respond to the RESPA RFI. *See*, Exhibit 15.

## COUNT FIVE

### [Violations of RESPA]

### [Violations of 12 C.F.R. §§ 1024.35(d) and (e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failing to acknowledge and properly respond to notices of error]

96.     Medley repeats and realleges paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

97.     12 C.F.R. § 1024.35(a) provides

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

98.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower".

99.     Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to a borrower's mortgage loan.

100.    12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

101.    12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, of receipt.

102.    12 C.F.R. § 1024.35(e)(3)(ii) provides that a servicer may extend the time period for responding by an additional fifteen (15) days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

103.    12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

104.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally related mortgage shall not … fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

105.   Standard servicer duties are those "typically undertaken by servicers in the ordinary course of business." 78 FR 10696, 10739.

106.   12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally related mortgage shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

107.   NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) because it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, Exhibit 11.

108.   Homebridge received NOE #1 at their designated address for receipt of such on October 16, 2020. *See*, Exhibit 12.

109.   Through NOE #1, Medley alleged that Homebridge committed errors in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11) by failing to properly respond to a request for information. *See*, Exhibit 11.

110.   Homebridge failed to send written notice acknowledging receipt of NOE #1 as required by 12 C.F.R. § 1024.35(d) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) which constitutes a clear, distinct, and separate violation of the same.

111.   Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(A), Homebridge was required to respond to NOE #1 within seven (7) business days of their receipt of NOE #1. That is, Homebridge was required to respond to NOE #1 on or before October 27, 2020.

112.   Medley did not receive a response to NOE #1 within the required time frame pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(A). *Id.*

113.   While Homebridge eventually provided the payoff statement requested by and through the Payoff/TILA RFI, the Payoff Response does not constitute a proper response to NOE #1 as required by 12 C.F.R. § 1024.35(e)(3)(i)(A). Specifically, the Payoff Response: (1) failed to address the remainder error outlined in NOE #1 - Homebridge's failure to identify the actual security for which the loan serves as collateral or the trustee thereof; (2) failed to notify the Borrower that Homebridge either: (a) corrected the error outlined in NOE #1; or, (b) determined that no error occurred. *See*, <u>Exhibit 14</u>.

114.   Homebridge did not notify Medley of any extension to the time limit pursuant to 12 C.F.R. § 1024.35(e)(3)(ii). *Id.*

115.   Homebridge's failure to acknowledge NOE #1 constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E).

116.   Homebridge's failure to respond to NOE #1 constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. § 2605(k)(1)(E).

117.   NOE #2 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) because it is a "written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See*, <u>Exhibit 15</u>.

118.   Homebridge received NOE #1 at their designated address for receipt of such on November 9, 2020. *See*, <u>Exhibit 16</u>.

119.   Through NOE #2, Medley alleged that Homebridge committed various errors in relation to the Loan pursuant to 12 C.F.R. § 1024.35(b)(11). *See*, <u>Exhibit 15</u>.

120.   Homebridge notified Medley of an extension to the time limit pursuant to 12 C.F.R. § 1024.35(e)(3)(ii). *See*, <u>Exhibit 17</u>.

121.    Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), Homebridge was required to respond to NOE #2 within thirty (45) business days of their receipt of NOE #2. That is, Homebridge was required to respond to NOE #2 on or before January 11, 2021.

122.    Medley did not receive a response to NOE #2 within the required time frame pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(A). *Id*.

123.    Homebridge's failure to respond to NOE #2 constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(e)(1) and 12 U.S.C. § 2605(k)(1)(E)

124.    Homebridge's actions are part of a pattern and practice of behavior in violation of Medley's rights and the rights of other similarly situated borrowers and in violation of Homebridge's obligations under Regulation X of RESPA.  Homebridge's pattern and practice as such is evidenced by their refusal to appropriately acknowledge and respond to and correct the errors Medley alleged through NOE #1.

125.    Medley has suffered actual damages as a direct and proximate result of Homebridge's actions including incurring legal fees and expenses in the preparation and mailing of NOE #1 and other legal expenses, anxiety, and emotional distress, as further described, *supra*.

126.    As a result of Homebridge's actions, they are liable to Medley for actual damages and statutory damages. 12 U.S.C. § 2605(f)(1).

127.    Additionally, Medley requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT SIX

### [Violations of the CFA, N.J.S.A § 56:8-2]

128.    Medley repeats and realleges paragraphs 1 through 44 with the same force and effect as though fully set forth herein.

129.    The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

130.    In the operation of its business, Homebridge has engaged in the use of unconscionable commercial practices, as further described, *supra*.

131.    Each unconscionable practice by Homebridge described, *supra*, constitutes a separate violation under the CFA.

132.    Homebridge is a "person" as defined by N.J.S.A. § 56:8-1(d) as Homebridge is a partnership, corporation, company, trust, business entity, or business association

133.    Homebridge's failure to acknowledge the Application within five (5) business days of receipt and provide the requisite notice thereafter constitutes one (1) clear, separate, and distinct violation of 12 C.F.R. § 1024.41(b)(2)(i). *See*, Exhibit 3.

134.    Homebridge made no attempts whatsoever, let alone diligent attempts, to attempt to obtain necessary documents to complete either the Application. Homebridge's actions in failing to exercise reasonable diligence in obtaining missing or incomplete information and documentation to complete either of the Applications as expressly required by 12 C.F.R. § 1024.41(c)(2)(iv) and 12 C.F.R. § 1024.41(b)(2)(i)(B), constitute one (1) clear, separate, and distinct violations of 12 C.F.R. § 1024.41(b)(1).

135.    As described, *supra*, Homebridge failed to timely evaluate Medley's Application as required by 12 C.F.R. § 1024.41(c)(1) and 12 U.S.C. §§ 2605(k)(1)(C) and (E).

136.     As described, *supra*, Homebridge failed to properly respond to the Payoff/TILA RFI and failed to timely respond to the RESPA RFI.

137.     As described, *sup ra*, Homebridge failed to timely acknowledge and failed to timely respond to NOE #1 in violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E).

138.     As described, *supra*, Homebridge failed to timely respond to NOE #2 in violation of 12 C.F.R. § 1024.35(d) and 12 U.S.C. § 2605(k)(1)(E).

139.     Homebridge/s actions, in continuously disregarding federal guidelines requiring them to exercise reasonable diligence in reviewing Medley's loan modification application, is an unconscionable act under the Consumer Fraud Act.

140.     Homebridge's actions, in refusing to review the Application and instead continuing to prosecute Foreclosure against Medley, is an unconscionable act under the Consumer Fraud Act.

141.     Homebridge/s actions, in continuously disregarding federal guidelines requiring them to timely and properly respond to Medley's requests for information and notices of error, is an unconscionable act under the Consumer Fraud Act.

142.     Homebridge's unconscionable commercial practices have caused Medley the following ascertainable losses:

    a.  Loss of significant time and resources gathering duplicative documents and filling out duplicative forms in having to resubmit loss mitigation applications, and incur legal fees and expenses for the same;

    b.  Legal fees and expenses to draft and mail NOE #1 via Certified U.S. Mail to seek Homebridge's compliance with their

obligations under Regulation X to ensure that Homebridge properly respond to Medley's Payoff/TILA RFI;

c.  Legal fees and expenses to draft and mail NOE #2 via Certified U.S. Mail to seek Homebridge's compliance with their obligations under Regulation X to ensure that Homebridge properly respond to Medley's NOE #1 and the Application;

d.  Medley suffered great emotional distress driven by the continued fear of losing the Home in foreclosure, which has resulted in anxiety and other mental distress.

143.   Medley is entitled to treble the damages, reasonable attorneys' fees, filing fees, and reasonable costs of suit caused by Homebridge's violations of the CFA. N.J.S.A. § 56:8-19.

144.   Medley further requests, in addition to treble damages, "other appropriate legal or equitable relief" in the form of damages for the extreme emotional distress, directly and proximately caused by not knowing day to day whether or not she will lose her Home. N.J.S.A. § 56:8-19.

## **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Shana-Kay Medley respectfully requests that this Court enter an order granting Judgment in her favor and against Defendant Homebridge Financial Services for the following:

A.    For an award of actual damages as to allegations contained in Counts One through Five;

B.    For statutory damages of up to Two Thousand Dollars ($2,000.00) for each and every separate violation of RESPA as contained in Counts One through Five;

C.      For treble actual damages, attorneys' fees, and costs as to the allegations contained

in Count Six;

D.      For reasonable attorneys' fees and costs as to Counts One through Five; and,

E.      Such other relief this Court may deem just and proper.

**DANNLAW**
*Attorney for Counsel for Plaintiff*
*Shana-Kay Medley*


<u>*/s/ Javier L. Merino*</u>
Javier L. Merino, Esq.

## **JURY DEMAND**

Medley hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
The Dann Law Firm, PC
*Counsel for Plaintiff Shana-Kay Medley*